Good morning, your honors. May it please the court. Craig Anderson on behalf of the defendant and appellate. The crux of a 14th amendment deliberate fabrication of evidence. Could you put the mic a little closer to you? Thank you. Is the denial of a right to a fair trial. The court has said this is a stringent test that can only be satisfied if the alleged fabrication is so significant that it could have affected the outcome of the criminal case. Here, the plaintiffs have identified six pieces of evidence that they allege were fabricated. Three pieces of direct fabrication and three alleged pieces of circumstantial counsel. Before you get into that, would you address the concern that a large part of your appeal is simply not within our jurisdiction, not reviewable? Yes, this appeal is certainly proper under the interlocutory appeal doctrine for qualified immunity as we are not contesting any of the facts that are material to this appeal. We do not dispute that the alleged fabrication of evidence statements were either omitted from the officer's reports or were either mischaracterized or inaccurately stated in the report. So then just so we're on the same page, taking all of those facts as true, we proceed to the analysis. Is that what you were getting ready to do? Correct. Yes. Assuming all of the facts that the plaintiff has set forth is true, the district court still erred by failing to grant the defendant detectives, excuse me, qualified immunity. The district court did identify three disputed facts that we have argued are not material. If you'd like me to address those, I could. Well, it doesn't matter because even if they're disputed, we construe it in the light most favorable to the plaintiff and see where that takes us. Correct. There's only one fact that we are disputing, and that is the fact involving a conversation regarding the judge. We can't resolve any dispute, so it's probably not fruitful for you to tell us what you dispute. Correct. You cannot resolve disputes, but you can disregard the district court's factual finding if that finding is blatantly contradicted by the record. No. I think we, well, I start from the premise that we take all the facts by the plaintiff in the light most favorable to the plaintiff, and we don't get into whether the district court erred in fact finding. None of that is relevant to our analysis at this point, in my view. Okay. Well, then moving on to the, I'll move to the first, the three pieces that the plaintiffs allege are evidence of direct fabricated evidence. The plaintiff has cited three different areas, or three different assertions in the officer's reports that they claim are, were directly fabricated. The first one was the injuries in the reports that Lobato admitted to inflicting upon her attacker. Lobato told the detectives that, and this is the quote, I cut his penis, I remember that, and I was trying to cut it off, but I don't know if I actually did. In the detective's reports, they affirmatively stated that she had cut it off. It is our argument that although this is inaccurate, it does not rise to the level of a constitutional violation because it is not a fabricated piece of evidence. There was substantial evidence in the record that Lobato had told at least four other witnesses that she had affirmatively amputated the penis from the body. Further, even if those witnesses did not exist, this at most would be evidence of an inaccuracy or a mistake, but not a deliberate fabrication due to the evidence. The case I would cite to to support that is Gosvick, where the detective wrote in his report that the victims of sexual abuse had tested positive for sexual abuse, where in reality, there was only a suggestion that they had been sexually abused. So he had misstated the doctor's findings. So it would be the argument on that direct fabricated piece of evidence that it does not rise to the level of a constitutional violation because although it is inaccurate, perhaps careless, it is not fabricated. The second piece of evidence they allege is direct evidence is the statement in the report that Lobato said she snapped, and they put that word in quotes. It is true that in her interview, she never said she snapped. However, she did say, after I grabbed his penis and pulled out my knife, everything went black, and I don't remember what happened after that. So our argument on that statement is that that is a fair representation of the evidence, although slightly inaccurate. There was evidence in the record that could support the detective's subjective interpretation of her statement that she snapped. There is no evidence that he fabricated that that occurred or that he made that statement up. They also point to this question asked by Detective LaRochelle during the interview. This is not in the reports, but he stated to Ms. Lobato, now, you said earlier you completely lost it. It is true that Ms. Lobato never said she completely lost it. You said it's not in the reports? That statement is not in the reports, completely lost it. That is simply in her statement. The detective asked her, the detective prefaced a question with, you stated earlier you completely lost it. And that was in reference to her statement, everything goes black, and I don't remember what happened after that. But he never said that she said that. He had paraphrased her earlier. So that's just a subjective interpretation of something she had said earlier. And when he asked the question, she never said, hey, I never said that, or that's incorrect. She answered the question. So, and because that's not in any of the reports and was simply in the flow of a conversation of questions and answers, I don't believe that that can rise to the level of a directly fabricated piece of evidence. He was simply asking a question to follow up. The final one is the holding cell one, which we talked about, where in Detective Foulson's report, he states that when they went to the jail, Ms. Lobato commented that the cell reminded her of the area where her attack had taken place. And that is found in both the arrest report and in the officer's report. Ms. Lobato has never said that did not occur. This is what the disputed fact that we were talking about. At her 2002 criminal trial, she admitted to it. The point is, did she deny making that statement? No. She admitted to it in the 2002 criminal trial. There is a dialogue between her and the prosecutor where she admits to this statement, admits that it happened, and explains it away. At her deposition, she said, I don't remember making that statement. She never said she did not. So 20 years after the fact, her testimony was, I don't remember making it. But that's not sufficient as summary judgment to create an issue of fact on that issue based upon the fact that in 2002, she admitted to making the statement. And so they have construed that that that's a denial, but she never denied it. In fact, she says, I don't think it's something I would have said, but she later admitted it's possible she said it. And that's on 11 ER at 2482 and 2485. But don't you think that raises an issue of fact that we are not authorized to resolve at this point? If she creates some doubt about it, then we just assume her version of the events, the version most helpful to her instead of going to try to parse out whether or not it's a material issue of fact. I think you probably would be better served to just not quibble about whether or not it's a material issue of fact and talk about why you get qualified immunity, even if we attribute those in the light most favorable to her. Okay. And I understand your honor's position. I would send her Wilkinson v. Torres that because I would agree with you that it survives a motion to dismiss, but there is not any concrete evidence where she says, I never said that we have evidence where she did state it under oath. I analogize it to the sham affidavit rule that you can't come back and change your testimony because she did state under oath. Oh, I remember saying that. And here's why I said it. Then 20 years later, she says, I don't remember saying it. And so I do not believe that gets her passed at the summary judgment stage, but I understand your opinion on it and I won't quibble. I would say counsel, I think the framing of the case, I understand when you start off with it, there's a videotape of a car wreck. That's the Supreme Court case that there are times we can blatantly the facts. I think for purposes today, I think it would be behoove at least me. And it sounds like Judge Robinson, we could focus on, okay, assuming their side of the facts, they're over there, their side of the facts, why do you still win if their version of the facts is right? Underqualified immunity. Understood. And you were talking about Scott B. Harris with the video. I would just cite Wilkinson v. Torres that did not involve a video, but took the standard I just said. Moving on. So those would be the three pieces of evidence that they allege are evidence of direct fabrication. And as stated, the two ones that we're not quibbling about are fabricated evidence, because there was substantial evidence in the record supporting those statements in the report. Moving on to the circumstantial evidence, which is the mischaracterizations of her statement and the omissions. I'll start with the omissions. The omitted from their report, her statement that her attack occurred about a month ago, and they omitted that she referenced her attacker as being really large, like a giant. So those omissions are not sufficient to defeat summary judgment under both Devereaux and the O'Done case, which both held that omissions are not sufficient to create an issue of fact unless there's other evidence that can be attributed to it. And the statement that her attacker was really large, like a giant, are subjective opinions that would not have changed the analysis as to Further, I would point out that with the officer's report, her voluntary statement was provided contemporaneously with it. So it was, although not part of the report, the report does say reference the statements of the witnesses for further information. So it was included as part of the package that went over with the report, so that information would have easily been known because anyone deciding whether to pursue charges or not would obviously read the suspect's statement before making that decision. On the mischaracterizations of the evidence, one again was the injuries that Ms. Lobato admitted to inflicting upon her attacker, which is what we just talked about with the fabricated evidence. And the other one is the location of the attack. It is undisputed that Ms. Lobato told the detectives that her attack happened on the But they qualified the statement by saying she appeared unsure and that she maybe was questioning whether that was accurate. That is not fabricated evidence. First, the detectives are allowed to use their opinions and their subjective views of what the witness is saying. Obviously, they're trained investigators, and they're the ones interviewing. They're the ones talking to the person. They're in the room. So they are not prohibited from saying, hey, I didn't believe this witness or this witness didn't appear to be sure. Further, the statements that she appeared unsure were supported by her own statements, where she said it was possible she could be mistaken about the location because, and her quote, I don't remember a lot. And her quotes, I was out of my mind on drugs and that I don't know Las Vegas very well. So there was a reason why the detectives put those in the reports. The stringent test for fabrication of evidence requires, essentially, that the detectives be making up evidence. That is what the cases tell us. The closest case to this one, for the qualified immunity purposes, is Gosnik, where the detective was investigating a sexual abuse case. And he put in his report, as I have already mentioned, that the detectives or that the children had tested positive for sexual assault, where in truth, there was only a suggestion they had. So he had misrepresented the doctor's findings. Also, the detective said that eight witnesses had come forward against the suspect, when in truth, only two had. So he both embellished, misrepresented, and stated things incorrectly. However, because there was evidence in the record supporting the general proposition to what he was saying, the court found no constitutional violation. In the cases where constitutional violations were found, Konstanich and Peters, the fabrication of evidence was much greater. In Konstanich, the detective was hostile towards the witnesses, made them say things they didn't intend to say, and reported interviewing at least six witnesses that he never had, or that she had never interviewed. She had merely talked to them. She also reported that she had spoke to doctors who she had never spoken to. So that's fabrication of evidence, where you're just making things up that are not supported anywhere else in the record. And it was the same thing with Peters, where in Peters, I think it was 302 quotations the witnesses said they never said that were included in his file. And there were multiple, they say there's scores of quotations, multiple quotations, the witnesses and the witnesses denied ever having been abused. So they said this never even happened. This case is much closer on the scale to Gosvick than it is to Peters or Konstanich. Your honors, have any questions? Well, so I was going to jump in. I anticipate opposing counsel is going to say here, under our view of the facts, the officers misled as to where the crime was committed, the time it was committed, who the description of the victim, and the severity of the attack. And if we're right on those facts, the officers were clearly on notice in 2001 that you couldn't do those things. So I don't know what they're going to say, but my guess that's where they're going. What's your response to that? On the timing, there's no misrepresentation. The detectives... Well, no, let's not re-argue the facts. They're saying under their version of the facts, this is what it is. So we can't re-argue those. If they're right, I'm not saying they're right, but in the odd jurisdictional position Supreme Court has put us in for these cases, maybe they'll rethink about this whole process another time. But since we're here, we have this kind of fall weird argument, right, where you can't really argue your case. You have to kind of accept their case and argue why they still lose. So assuming that they can prove to a jury, I'm not saying that they're right. And you don't have to agree with this, but just assume that they can prove to a jury those four things. What is the case law or was their case law at the time to put the officers on notice that they shouldn't be doing those kinds of things? Are you saying that the officers could do those things or that... That's what I'm trying to piece through at this phase. I agree. Before the district court, you got a whole bunch of arguments. Before us, we're kind of handcuffed up here with what we can do. Okay. So to argue that as a legal matter, so on the two omissions, the timing and the size of the attacker, the law says that it's not a constitutional violation. Okay, counsel, we've heard that argument. Okay. So if we disagree with you on that, if we say construing the evidence in a light most favorable to the plaintiff, there are constitutional violations here. Why don't you lose? Because the law would not be clearly established under Galsvik and O'Donnell on the omissions and the fabrications they're that you cannot base a report on. If we take the position of the plaintiff that these are misstatements and false falsehoods, if we agree with that, then why don't you lose? Because you would move to the clearly established prong, okay, of the law, which there's two omissions and two mischaracterizations. The omissions, it's not clearly established that you have to include all of the omitted statements in the report. And it's not clearly, and then the key word is deliberate mischaracterization. And if you get to the fabricated or the circumstantial evidence, they have to show evidence that the detectives knew that Lovato was innocent and continued to pursue. And there's no evidence of that, that they knew she was innocent and continued to pursue it. Counsel, to me, your stronger argument is that the prosecutor made an independent decision on these facts and you never touched the argument. Well, and I agree because I was dealing with the harder issues because it is undisputed that all of this evidence was provided contemporaneously at the start to both the prosecutor and the criminal defense attorneys. These arguments were all raised and rejected by two criminal jurors. It is definitely my easier argument, but that's the more difficult argument that I'm addressing with both, with the three of you. Well, the plaintiff maintains that the prosecutor's decision doesn't immunize if the prosecutor received false information. Correct. And they didn't receive false information because they received all of the information. They received her voluntary statement contemporaneously with the report. They received the witness statements. They knew there were timing issues. They knew there were the issues with the location. They knew there were issues with the characteristics of the attacker. And they knew there were characteristics of what she said she had inflicted upon her attacker. So the prosecution got her statements and the report. Yeah, the prosecutor received the entire file. So they had the witness statements and the officer's reports and Lovato's statement and the recording of her statement to determine whether there was any coercion or malfeasance going on with the interviews. They received the entire file and there's a declaration from the prosecutor in probable cause existing. All right. I'll reserve a minute. Thanks. Good morning. My name is Elizabeth Wong and I represent the plaintiff appellee, Kirsten Blaise Lovato. What you heard from Mr. Anderson was a lot of discussion about the facts. Why did the detectives do what they did? Did they do it? Did they characterize Ms. Did they say that Ms. Lovato snapped when she didn't say that because it was consistent with other evidence? Was it because they were careless or negligent or was it intentional? These are all questions that this court cannot address in this interlocutory appeal from a denial of qualified in 2001 that police officers could not fabricate evidence to accuse somebody of a crime that they did not commit. You cannot put in a police report that somebody said she snapped in quotes when she did not say that. You cannot put into a police report that she said the attack that she was describing from over a month ago occurred on Flamingo when she never said the word Flamingo. So there's all kinds of things that the district court found a reasonable jury could determine were direct fabrications and that and there was also evidence of circumstantial fabrications. For instance, on the issue of whether or not the detectives had any inkling that she was innocent, they had reams of exculpatory evidence and evidence that she was innocent. So for instance, she said that the attack occurred over a month ago and this wasn't just her saying it. The from interviewing Jeremy Davis, her ex-boyfriend, who said that he knew that she left her car at her place at the end of May between May 25th and May 28th of 2001. When she described the attack that occurred over a month ago, she was saying that right afterwards she drove to Davis's house and left her car there. The detectives also had evidence of her innocence from Steven Piskowski, Lobato's friend, who helped her pick up the car from an apartment complex near Davis's house on June 6th of 2001. The detectives put into their reports that these things, these exculpatory pieces of evidence, which they knew completely distinguished what she was describing from the homicide that they were investigating, they put that this incident actually happened the month previously. And so they were trying to characterize and put into a certain inculpatory light the evidence that they had gathered. And so going to the, and this leads me to the question about what prosecutors knew. First of all, the prosecutor's declaration that was submitted in support of summary judgment doesn't really say anything. This court in the Caldwell case considered a similar declaration from a prosecutor in a fabrication case. And what the court said is that, first of all, the presumption of prosecutorial independence does not, we don't, we're not holding that it applies in a fabrication of evidence case. And we submit that it should not apply in a 14th Amendment claim because- Why not? Why shouldn't it apply if the prosecutor gets all of the evidence and independently decides, separate and apart from anything that the officers put in their reports, that there is probable cause? Why shouldn't we consider that? Because probable cause is not an element of a 14th Amendment claim for fabrication of evidence. Your due process right to a fair trial is undermined and violated anytime fabricated evidence is used against you in your trial to criminally charge you. But don't we have cases that say that the fair trial right is not compromised if the prosecutor makes an independent decision and is not affected by the fabrication? Not in the fabrication of evidence context. So what case are you reliant upon to support the premise that in the fabrication arena, the independent prosecutor theory is irrelevant, is inapplicable? What case says that? Well, this court hasn't said that it doesn't apply. In Caldwell, it said it declined to decide the issue. It said what? In Caldwell, the court declined to hold, to rule on whether or not the presumption applies in a fabrication case. Right. And so I'm not sure it's fair to say that the independence of the prosecutor cannot be considered in a fabrication case because no case has held that. Well, I mean, there's cases outside of the circuit that talk and actually within the circuit. For instance, I have in front of me, Richards versus County of San Bernardino, where the court said the right that it would be anomalous to turn away a plaintiff who has been injured by deliberately fabricated evidence simply because that evidence alone was not sufficient to cause the conviction. The right to a fair trial is impinged either way. That's a different point. That's a different point. I'm asking you about the independent prosecutor issue. And if any court has ever said that the taint, if you will, is not removed if the prosecutor independently comes to the same conclusion of guilt. I mean, the there are the, for instance, in the Third Circuit in the Halsey case has talked about how a your fair trial right under the due process clause of the 14th Amendment is violated regardless of whether the prosecutor knows of the evidence. But most importantly here, you don't have to decide that question. You do not have to go out and decide in this case whether or not the evidence applies here because the prosecutor did not know of the officer's fabrications. And when you look at the prosecutor, they know if the if the prosecutor saw all of the evidence, if they saw the reports and they saw her statements and the prosecutor could look at the difference between those and see that there is some discrepancy, why wouldn't they know that there is some discrepancy and possible misstatements or omissions or whatever they may be? Because not everything that the officer said, Ms. Lobato said in her discussion with them was in the interview, was in the recorded part of the interview. So for instance, the fact that they put snapped, that she said she snapped in her report, their claim is that she said that before they turned on the tape. And when you look at the officer's report, which is at ER 2380, the officers don't parse out what they're saying. They're not summarizing what she's saying in the recorded interview versus what she said before. They just say, here's what she told us in our conversation and or her statements. They put a bunch of things in quotes that she didn't say, such as that she said she snapped. And by the way, the district court found that a reasonable jury could determine that that was an effort to gloss over the huge differences between what Ms. Lobato was describing as an attempted sexual assault and this heinous, terrible murder of Duran Bailey, which was on the other side of town, occurred at a different time in a different location. So it would seem to me that the answer to Judge Rollins or one potentially is that that is ultimately a factual decision as to whether the prosecutors really did have all the evidence or not. And we can't make that here. Am I missing something to me? Isn't that the better answer? Yes, that is the better answer. And that is what the district court said. The district court found that a reasonable jury could find that the fabricated evidence had a substantial controlling impact on the prosecutor's evaluation of the case and their theory of the case. And the district court, and as you are aware, there were 22 volumes of excerpts of records submitted to this court. We saw the district court had all of that information. The district court also received supplemental briefing. The district court had an oral hearing where it went through with Mr. Owens and Mr. Anderson, all the pieces of evidence. The district court evaluated the evidence very carefully. And that is not something that this court can look at in this posture. At the end of the day, the question of whether or not the evidence is a factual question, the district court found that there was a genuine dispute of material facts. And as Judge Fitzwater pointed out, when a prosecutor does not know of the fabricated evidence, you can't say that the presumption of prosecutorial independence applies, even if you were to find that it applies in a 14th Amendment to process claim like this one. With respect to the findings of the district court, as we've talked about, and I think it's clear that the totality of the fabrications, both direct and the material omissions, are what led the district court to find that a reasonable jury could find fabrications here. And when the defendants talk about what their intent was and whether or not the facts were material, they're not really disputing materiality. What they're actually disputing is the sufficiency of the evidence. The facts that we say were fabricated, which again were found by the district court, a reasonable jury could view in our favor, concern the who, what, when, where, and how of this crime. They're basic facts about what Lobato said versus what the defendants were investigating. The defendants dispute the facts about what their intentions were and why they did what they did, why they characterized, why they put snapped in the report when she didn't say snapped. Their excuse is there was something else that she said that was somewhat similar, and so that's what we meant. Those are all factual disputes that the court cannot consider in this posture. Counsel, may I ask you, are you focusing in this appeal on the fabrication of evidence and none of the other issues that were part of the case, like the civil conspiracy and detention without probable cause? Are you just talking about the fabrication of evidence claim? I just want to be sure what you're asking us to address. Well, I want you to affirm the district court's finding that she should get a trial on the claims that the district court said that she should get a trial on, and so with respect to the other claims, those are also claims that should proceed to a jury trial. Let me ask you that. That doesn't answer my question, though. I'm asking you precisely what claims are at issue in your view on this appeal. You've talked only about the fabrication of evidence, so is that the only claim that you are... No. I'm not sure. I'm just asking you to affirm the constitutional violation of qualified immunity because the answer may be different for each one of those issues, and so I wanted to be clear which ones you are arguing here today. The defendants are challenging all of the district court's findings on the claims that it said we should go to trial. Well, for instance, the state court claims are not properly forced. Well, yes. The court can't address the state court claims. There's no penitent jurisdiction over those. As to the Monell claim, they didn't even move for summary judgment on that, so the court's not addressing those. We've talked about fabrication. With respect to the Fourth Amendment claim, I understand their argument also to be that they're entitled to qualified immunity on that claim, but again, their argument for qualified immunity revolves around a dispute over the facts because fabricated evidence can't make up probable cause. Well, then I have a question on that. Wasn't there a finding of probable cause in the state court? There was, but we're not collaterally stopped from reasserting it here when the basis for the ... So, for instance, at the preliminary hearing, Mr. Detective Tosin lied. He lied at the preliminary hearing, resulting in the findings. So, for instance, he lied. He testified that she said she snapped. He testified that she said it occurred at Flamingo and Boulder Highway. I just wanted to ask you a question about that because it appears that we have a case, Scafidi, that says under Nevada law, probable cause determination at a preliminary hearing has preclusive effect unless evidence of misrepresented facts or manipulated evidence exists. So, you're saying that the evidence of the misrepresented facts precludes, well, negate the determination of probable cause at the state court. Is that your argument? That's correct. Okay. On the conspiracy claim? Yes. All right. So, what is the law that put the officers on notice about that? Well, it was clearly established at least by 2001 that officers could not work together and reach an agreement to accuse somebody of a crime that they knew she didn't commit. I appreciate kind of the common sense notion that they must have known that, but the Supreme Court's been a little tough on us when we kind of flow in the common sense world. So, is there a case you can point us to? Because I think there's a lot of disagreement on this issue. You got some stronger claims, you got some weaker claims. Maybe this is one of your weaker ones, but I'm just saying, do what you got to do. But is there a real case you can point us to on this one? I don't have a case that I can point you to. In our brief, we cited two cases, and honestly, these cases predate Ziegler. But there are cases for decades that this circuit has set, has allowed conspiracy claims to go forward when they involve detectives or officers from the same police department. How does Ziegler change that? We have the arguments that we made in our brief, which is it's section 1885, this is section 1983. I recognize that it's one of our difficult claims. Okay. No, that's fair. So, are there additional questions on any of the claims? So, I guess I would conclude by saying that Mr. Anderson, when he talks about the direct and the circumstantial, he lists them off. The district court did the same thing. It talked about the fabrications concerning the date of the attack, the location of the attack, the time of the attack, the identity of the attacker. But we can't, it's not just about each of these things individually. What the district court found is that when you look at them both individually and cumulatively, what the detectives were doing was taking statements that made about something else that happened at what they understood, what they knew or should have known was at a different time, date, and location involving a different person, and made it look like the crime, the homicide that they were investigating. The police reports summarized and characterized all the evidence that they did give over to the prosecutors. There were recordings of the witness interviews. There was a recording of Ms. Lobato's interview. But it caused the prosecutor to view all of this evidence in a different lens. The only people who would ever accuse, Ms. Lobato had told a number of her family and friends about the attack on her in May of 2001. She told them about it in June. The detectives knew that her family and friends had heard that from her before the murder of Duran Bailey. But the only people who ever accused her of this crime, the murder of Duran Bailey, were the officers. When we think about the package of information that was given over to the prosecutors, not only was there information that wasn't given to them. For instance, it's not just about Lobato's recorded interview, but it's about the other witnesses. We've got the depositions and affidavits from Dixie Tienken, from Steven Piskowski, who talk about how there was a large part of their interviews that were not recorded, where they told the officers that what they were investigating was something different than what Ms. Lobato told them about. That information was not given over to the prosecutors. But when we look at the package of information that was given to the prosecutors, every step that the detectives took, everything, every statement in their police reports that they attributed to her that she didn't say, every omission, all of these things were geared towards one purpose, and that was to fit what she was saying into the box that they were investigating, into the homicide that they were investigating. Otherwise, there wouldn't be no reason for them to write police reports that summarize all the evidence. You would just give all the evidence to the prosecutor and let the prosecutor sort through it. The entire purpose of these reports containing the false statements and the material omissions was to lead the of seeing this as a confession to this homicide, to this murder that she did not commit. With respect to the Gauss-Fick and O'Donohue cases, this case is not a case about technical inaccuracy. In Gauss-Fick, you've got an officer who wrote that the sexual abuse was positive as opposed to consistent with. That doesn't even change the meaning. That's not what we have here. We've got the officers attributing things to Ms. Lobato that she did not say that make it look like she was describing a murder that she did not commit. So, for instance, when they leave out that she said the attacker was giant or really big, that, the district court found, a reasonable jury could find made a difference because she was describing somebody else. The detectives knew that Duran Bailey was slight of frame. And so those two cases are not, are not, are factually in opposite here. The only way that they could apply is by, by contesting the district court's conclusion that a reasonable jury could find that they deliberately fabricated evidence. This is not a case about technical inaccuracy. It's not a case about negligence. It is a case about saying that somebody said something they didn't say, writing it into a police report. And it's been established in this court for decades that there's no minor amount of perjury or false evidence that's somehow actionable. And here, a reasonable jury could find that it was not minor because they accused her of something that she did not commit. Thank you, Counsel Lobato. Briefly, I would like to point out that they're saying they shaded their investigation to conceal this evidence. Well, the officer's report clearly puts any reader on notice that there's a timing dispute. The detectives included the statements from Renninger and Pazowski where they said Lobato had reported this in May and other witnesses placed the, the timing of her attack prior to the July 8th event. That is in the officer's report and any reader would know that. The officer's report tells the reader there's a different location provided by Lobato. And then with respect to the injuries, it does state that Lobato said she cut it off. But there's also references to other witnesses who said she stabbed him in the abdomen. She swiped one time. So all of these issues were known to the reader that disputes existed as to the timing, the location, the characteristics of the injuries. So they were not fabricating to shade or hide. This would have been known to anyone who read it. And obviously in her statement, which is where everything comes from. And I would also just point out quickly in the last 33 seconds, these witnesses were all, or four of the witnesses were deposed. And they all testified that everything they said is in their, is in their voluntary statements. The detectives did not coerce them, did not try to, to influence them, that all of their statements are accurate and truthful. And so the... The officer's put snapped in quotation marks if she didn't say that. Because it's an inaccurate summation of her statement. Everything goes black. I don't remember a lot. A person could have... That's a little different than snap. Normally when you snap, it's put in the context of somebody was so overcome with rage or something that they committed. Well, but she said once I grabbed his penis and pulled out my knife, everything goes black. I don't remember a lot after that. So that would be an inaccuracy that, but it's not a deliberate fabrication. We understand. All right. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for today. We are in recess until 9.30 AM tomorrow morning at Boyd Law School.
judges: RAWLINSON, OWENS, Fitzwater